UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MONTANA

In re

**THE HOMESTEAD AT WHITEFISH LLC**,

Debtor.

Case No. **14-60353-11**

# MEMORANDUM OF DECISION

At Butte in said District this 31st day of January, 2018.

In this Chapter 11[1] case, following confirmation of The Homestead at Whitefish LLC's (the "Debtor") Second Amended Plan of Reorganization dated October 10, 2014 (ECF No. 129) (the "Plan")[2], Don and Emily Maschmedt (the "Maschmedts") filed a lawsuit in Montana's Eleventh Judicial District Court, Flathead County (the "State Action"). Later the initial complaint was amended, and following the filing of Maschmedts' First Amended Complaint ("FAC") in the State Action, a Motion for Order Enforcing Injunctions and Releases Contained in Confirmed Plan of Reorganization (ECF No. 194) (the "Motion") was filed with this Court by the following parties: K2M, LLC ("K2M"); GFY87, LLC ("GFY87"); Great Northern Ventures, LLC ("Great Northern"); PMJ, LLC ("PMJ"); Mark D. Kvamme ("Kvamme") and Paul

---

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, all "Rule" references are to the Federal Rules of Bankruptcy Procedure, and all "Civil Rule" references are to the Federal Rules of Civil Procedure.

[2] *See* ECF No. 129.

1

Johannsen ("Johannsen")[3] (collectively, K2M, GFY87, Great Northern, PMJ, Kvamme, and Johannsen are referred to as ("Movants")).

In their Motion, Movants specifically request that the Court issue an order (i) confirming that the Court holds exclusive jurisdiction over the causes of action asserted by Maschmedts in the State Action, (ii) finding that the State Action violates the injunctions, releases, and terms of the sale contained in the Plan, (iii) directing the Maschmedts to dismiss the State Action, and (iv) permanently enjoining the Maschmedts from continuing the State Action, or seeking other similar relief in any other forum.[4]

Maschmedts oppose the Motion arguing that this Court does not have jurisdiction under 28 U.S.C. §§ 1334 and 157, or alternatively, that the "law of the case" doctrine controls the outcome of the Motion (ECF No. 202) ("Maschmedts' Objection").[5] A hearing on Movants' Motion was held in Missoula on October 31, 2017. The Movants were represented at the hearing by James A. Patten of Billings, Montana, and GFY87, Kvamme and K2M were also represented by Jeffrey K. Garfinkle of Irvine, California. Maschmedts were represented at the hearing by David B. Cotner and Kyle Ryan of Missoula, Montana.

At the hearing, Johannsen testified and the parties agreed to the admission of the Exhibits submitted by both parties.[6] At the conclusion of the hearing, the Court granted the parties time

---

[3] Under the Plan, Kvamme, K2M, Johannsen, and Great Northern are defined as "Insiders". Further, Kvamme and/or K2M were responsible for forming the entity that would be the "Plan Funder" responsible for purchasing the Homeowner Property through the Homeowner Sales, and the Debtor's property through the Plan Funder Sale. Each of the capitalized terms not defined herein shall have the meaning ascribed to them under the Plan.

[4] Motion at 2.

[5] Maschmedts' Objection at 1-2.

[6] *See* ECF Nos. 217 and 223.

to file simultaneous briefs and response briefs focusing on whether this Court had jurisdiction to consider the Motion.  The Court indicated to the parties that subject to its decision on jurisdiction, it may consider the merits of the Motion.  This decision is limited to Movants' request for an order confirming that the Court holds exclusive jurisdiction over the causes of action asserted by Maschmedts in the State Action, and Maschmedts' Objection that this Court does not have jurisdiction under 28 U.S.C. §§ 1334 and 157, or alternatively, that the "law of the case" doctrine controls the disposition of the Motion.  This Decision constitutes the Court's factual findings and legal conclusions pursuant to Rules 7052 and 9014.

## FACTS

Debtor filed its petition on March 31, 2014.  Prior to filing its petition, Debtor owned property in Flathead County, Montana for development purposes.  Maschmedts acquired Lot 1 in 2007 with a purchase price of $495,000.00.  Beginning in 2008, Debtor encountered difficulty selling its inventory of lots.  In August 2013, suit was filed against Debtor alleging among other things, that Debtor had failed to provide certain amenities that were referenced in the underlying lot sales agreements.  Six months later, in February 2014, this suit was settled.  Maschmedts were not a party to this suit.  A month later, in March, a second suit was filed against Debtor alleging substantially similar claims and seeking similar relief.  Maschmedts were not a party to this suit.[7]  The prospect of additional litigation and lack of liquidity caused Debtor to file its petition under Chapter 11.

A. **The Plan**

Debtor's Plan was a liquidating plan that provided for the sale of all of Debtor's assets, including property formerly owned by the Homeowner's Association ("HOA"), to the Plan

---

[7] Although not a party to the suits, Maschmedts were aware of the pending actions and allegations therein.

3

Funder, GFY87, free and clear of all claims and interests. In addition to acquiring the Debtor's assets, the Plan also contemplated that the Plan Funder would acquire each of the lots that had been sold to third parties by the Debtor from their existing owners, which included Maschmedts, Little/Stevenson, Ruxin, Forsee, and Witherill (the "Homeowner Lots"). The Plan also provided for the dissolution of the Debtor and the HOA.

Terms and provisions found in the Plan included the following defined terms:

"Homeowner Property" is the real property owned by a Homeowner that is the subject of a Homeowner Claim."

Article I, ¶ 51 of the Plan.

"Homeowner Claim" is a Claim asserted by the owner or owners of real property located on or adjacent to property owned by the Debtor for, or in any way related to, the Debtor's (a) sale of such real property, or (b) compliance with or fulfillment of promises to such owners that relate in any way to their ownership of such real property.

Article I, ¶ 52 of the Plan.

"Plan Settlement Term Sheet" refers to that term sheet, dated as of October [ ], 2014, by and among the Debtor, the Plan Funder, the Creditors' Committee, the Brock and Delagnes Plaintiffs, and each of the Homeowners except Don and Emily Maschmedt, attached as Exhibit A to Docket No. [ ] filed in the Chapter 11 Case.

Article I, ¶ 70 of the Plan.

"Releasing Defendants" includes the Debtor, on behalf of itself and its estate, the Plan Funder, Great Northern Ventures LLC, K2M LLC, RSJ Jr. LLC, PMJ LLC, Mark D. Kvamme, Paul Johannsen, the Homeowners' Association, and each of their respective predecessors, successors, assigns, heirs and personal representatives.

Article I, ¶ 78 of the Plan.

"Releasing Plaintiffs" includes the Brock and Delagnes Plaintiffs and the Homeowners except Don and Emily Maschmedt, and each of their predecessors, successors, assigns, heirs, and personal representatives.

Article I, ¶ 79 of the Plan.

"Settling Parties" includes the Debtor, the Plan Funder, the Creditors' Committee, and each of the creditors that are signatories to the Plan Settlement Term Sheet.

Article I, ¶ 85 of the Plan.

Along with the forgoing defined terms, the means for implementation of the Plan were included in the Plan:

> On and after the Effective Date, the Debtor shall be deemed to have effected a liquidation as a limited liability company under the laws of its state of incorporation and without prejudice to any right to alter or terminate such existence (whether by merger or otherwise) under such applicable state law, for the purposes of effectuating all aspects of the Plan, until such time as all aspects of the Plan have been completed, including but not limited to the Closing and distribution of all Cash on hand in accordance with the Plan, following which, the Confirmation Order shall effect a dissolution of the Debtor under Section 35-8-901 of the Montana Code.

Article IV, ¶ A of the Plan.

> To implement the Plan and fund the distributions under the Plan, all assets of the Debtor, including but not limited to real property of the Debtor will be sold to the Plan Funder through the Plan Funder Sale. The Plan Funder Sale will be consummated at the Closing as further described herein.

Article IV, ¶ B of the Plan.

> Upon closing, the Homeowners Association shall be dissolved without any further action required on the part of the Debtor or Debtor's officers or members. Any assets of the Homeowner's Association shall be transferred to the Debtor upon Confirmation. A vote by a Homeowner to accept the Plan shall such Homeowner's consent to the dissolution of the Homeowners' Association.

Article IV, ¶ J of the Plan.

Other provisions of the Plan provide for a compromise, settlement of claims, interests and controversies, under Rule 9019 subject to the caveat "except as otherwise specifically provided in the Plan or in any contract, instrument, or other agreement or document pursuant to the Plan[.]" Article VIII, ¶ A. Later, ¶¶ D, E, and F, outline Debtor, Defendant, and Plaintiff Releases (the "Releases"). Article VIII, also includes broad exculpation and injunction provisions that when read together limit liability of parties, and further permanently enjoin and preclude after the effective date a wide range of actions, including the commencement or

continuation that was the subject of compromise or settled under the Plan." ¶¶ F, G of Article VIII of the Plan.

Finally, the Plan states, "[n]otwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, on and after the Effective Date, the Bankruptcy Court shall retain jurisdiction over the Chapter 11 Case and all matters, arising out of, or related to, the Chapter 11 Case and the Plan." Article XI of the Plan.

### B. **Maschmedts' Objection to Confirmation of the Plan**

The Plan, as proposed by Debtor, classified Maschmedts' claim as a "Homeowner Claim" under Class 6. Under the terms of the Plan, Maschmedts would be paid $400,000.00, and convey Lot 1 to GFY87. Maschmedts filed a Limited Objection to Confirmation of Plan (the "Limited Objection"), which provided:

> Don & Emily Maschmedt, parties in interest, object to Debtor's Second Amended Plan to the Extent that it purports to compel the Maschmedts to sell their property known as Lot 1, Plat of The Homestead at Whitefish, Phase 1 ("Lot 1") to the Plan Funder or to abridge Maschmedts' vested rights in common areas and amenities pursuant to the "Declaration of Covenants, Conditions, Restrictions and Easements for the Homestead at Whitefish" ("CC&R") to which their purchase of Lot 1 was subject.

ECF No. 142. The Limited Objection further provided:

> Maschmedts have no desire to stand in the way of the settlements reached by Debtor and Mr. Kvamme with the other Lot Owners. If the Plan is modified to provide or if the order confirming the plan provides that Maschmedts' ownership of Lot 1 and their vested rights pursuant to the CC&R are unaffected by the plan, then Maschmedts would be satisfied. If there is some future dispute between Mr. Kvamme and the Maschmedts, as to the nature and extent of the Maschmedts' vested rights, then those issues would be appropriately resolved in the Montana state courts.

*Id*.

6

On November 5, 2014, the Maschmedts and Debtor filed a Stipulation in which the Maschmedts agreed to withdraw their Limited Objection on the condition that any order confirming the Plan include the following language:

> Without limiting the effect of the relief provided in this Order and the Plan, nothing contained herein is intended to, or shall, limit or expand the property rights of Don and Emily Maschmedt with respect to their Homeowner Property, whether pursuant to the Declaration of Covenants, Conditions, Restrictions and Easements for The Homestead at Whitefish or otherwise.

ECF No. 158. In addition to the above, Maschmedts would not sell, and would retain their Lot 1.

C. **Confirmation of the Plan**

An order confirming the Plan was entered on November 7, 2014 (the "Confirmation Order"). According to the Ballot Report, Maschmedts were the only voting creditor that rejected the Plan. The Confirmation Order referred to Article VIII of the Plan and found that the releases, exculpations, and injunctions set forth in the Plan and implemented by this Confirmation Order are fair, equitable, reasonable, and … are an essential component of the Plan Settlement Term Sheet." ¶ L of the Confirmation Order. And that, "failure to implement the injunction, exculpation, and releases would seriously impair the Debtor's ability to confirm the Plan." *Id.* The Confirmation Order further found that Debtor and Plan Funder were entitled to the protections of § 363(m) of the Bankruptcy Code, and that except as expressly provided elsewhere, all of Debtor's right, title and interest in the assets acquired by the Plan Funder would vest in the Plan Funder, free and clear of all claims. ¶ P of the Confirmation Order.

The Confirmation Order provided that all "Third Party Claims and Interests of any kind whatsoever against or in the Debtor or the Debtor's assets…are forever barred, estopped, and permanently enjoined[.]" However, such provision was subject to a caveat providing "[e]xcept as otherwise expressly permitted by the Plan or this Confirmation Order[.]" ¶10 of the

7

Confirmation Order. Finally, "[u]pon the Closing, and except as otherwise expressly provided in the documentation effectuating the Plan Funder Sale, the Plan Funder shall not be liable for any Third Party Claims and Interest against or in, or obligations of, the Debtor or any of the Debtor's predecessors or affiliates, as a result of having purchased the Debtor's assets." ¶12 of the Confirmation Order.

Following confirmation, and consistent with the Plan and Confirmation Order, the Plan Funder acquired all of Debtor's assets, the HOA's assets, and each of the Homeowner Lots, except Maschmedts. The Debtor and HOA were dissolved. A final decree was entered January 7, 2015.

### D. The State Court Claims

Maschmedts filed suit against the Plan Funder and others on December 21, 2015. The original complaint included claims for: declaratory judgment; injunctive relief; breach of contract; breach of implied covenant of good faith and fair dealing; negligent misrepresentation; actual fraud; constructive fraud; unjust enrichment; conversion; unfair trade practices; and consumer protection (the "Complaint").

### E. Removal to District Court and Remand

On February 3, 2016, the Plan Funder and other defendants in the State Action removed the case to the U.S. District Court for the District of Montana (the "District Court"). According to the Amended Notice of Removal, removal was appropriate based on the diversity of the defendants, and federal question jurisdiction. Movants argued before the District Court that the removed case was closely related to this bankruptcy case under 28 U.S.C. § 1334(b).

Maschmedts opposed removal and filed a motion for remand (the "Removal Proceeding"). Maschmedts prevailed and the case was remanded to state court. According to the District Court:

> The Court disagrees that the Maschmedts' claims present a "close nexus" to the bankruptcy plan… Here, the claims are state law tort and contract claims, and they will not require consideration of federal law. Although the fact of the bankruptcy proceeding may be relevant to the case, the heart of the Maschmedts' claims cannot be found there. If the bankruptcy plan does indeed become relevant to the Maschmedts' claims, its interpretation will appropriately be governed by state contract law. Additionally, the possibility that the lawsuit may reduce the assets held by GFY87 does not, on its own, confer jurisdiction.

ECF No. 223, Ex. 10, District Court Order July 21, 2016.

### F. The Amended Complaint and the Motion

Following remand, Maschmedts amended their Complaint. The FAC was filed with the State Court and added the Debtor as a defendant, and added causes of action against the Debtor.[8] The FAC includes the following claims: Declaratory Judgment; Alter Ego and Piercing the LLC Veil; Injunctive Relief; Breach of Contract; Breach of the Implied Covenant of Good Faith and Fair Dealing; Negligent Misrepresentation; Negligence; Actual Fraud; Constructive Fraud; Unjust Enrichment; Conversion; Unfair Trade Practices; and Consumer Protection. These claims are asserted against GFY87, Great Northern, K2M, PMJ, LLC, Kvamme and Johannsen. As a result of the claims filed by Maschmedts in the State Action, a motion was filed requesting that this Chapter 11 case be reopened so as to permit the filing of the Motion. An Order reopening the case was entered, and the Motion followed. The Motion and Maschmedts' Objection emphasize specific provisions in the Plan and Confirmation Order, and argue that those provisions support their respective positions.

---

[8] A second amended complaint has been prepared, but it is not operative and has not been filed.

**DISCUSSION**

I. **Questions regarding the parameters of this Court's post-confirmation jurisdiction are resolved by application of the close nexus test.**

"[T]he source of the bankruptcy court's subject matter jurisdiction is neither the Bankruptcy Code nor the express terms of the Plan. The source of the bankruptcy court's jurisdiction is 28 U.S.C. §§ 1334 and 157." *In re U.S. Brass Corp.*, 301 F.3d 296, 303 (5th Cir. 2002). The mere retention of jurisdiction in a chapter 11 plan is insufficient for establishing a bankruptcy court's post confirmation jurisdiction, absent jurisdiction under 28 U.S.C. §§ 1334 and 157. Section 1334(b) authorizes the bankruptcy courts to exercise jurisdiction of "all civil proceedings arising under title 11, or arising in or related to cases under title 11." Matters that are core proceedings are identified by 28 U.S.C. § 157. Since a plan has already been confirmed in this case, a determination of this Court's post-confirmation jurisdiction and its limits hinges upon the "close nexus" test as adopted by the Ninth Circuit in *In re Pegasus Gold Corp.*, 394 F.3d 1189, 1194 (9th Cir. 2005).[9]

Ultimately, "the test requires, particularized consideration of the facts and posture of each case, as the test contemplates a broad set of sufficient conditions and retains a certain flexibility." *In re Wilshire Courtyard*, 729 F.3d 1279, 1289 (9th Cir. 2013) (internal citation and quotation marks omitted). Along with defining the test, the *Wilshire* court stated:

> We reaffirm that a close nexus exists between a post-confirmation matter and a closed bankruptcy proceeding sufficient to support jurisdiction when the matter affects the interpretation, implementation, consummation, execution, or administration of the confirmed plan.

---

[9] *In re Pegasus Gold Corp.*, 394 F.3d 1189 (considering whether resolution of the claim would require interpretation of the plan, whether the claim would affect the implementation of the plan, and whether particular arguments would "endlessly stretch a bankruptcy court's jurisdiction").

10

*Wilshire Courtyard*, 729 F.3d at 1289. At its essence, Movants and Maschmedts have adopted irreconcilable positions based on their conflicting interpretations of the injunctions, releases, and terms of the sale contained in the Plan and Confirmation Order. Movants contend that Maschmedts' claims are barred by the Plan and Confirmation Order and this Court should enter such an order, while Maschmedts contend that the Plan and Confirmation Order explicitly exclude them from the releases and injunction, so there is no prohibition on their pending State Action.

### A. Movants and Maschmedts' positions are premised on their conflicting interpretations of the Plan and Confirmation Order.

Movants contend that the State Action violates the terms of the Plan and Confirmation Order[10], and rely on specific provisions of the Plan and Confirmation Order throughout their brief that they contend bar the State Action. For example, Movants point to Article VIII, Sections A and F of the Plan, which provide for a broad release of all "Claims, Interests, and Causes of Action of any nature whatsoever." They also direct the Court to paragraphs 10 and 12 of the Confirmation Order, as well as paragraph P, that broadly provides that the assets are sold free and clear of claims under 11 U.S.C. § 363. Taken together, Movants contend that the Plan and Confirmation Order bar the Maschmedts' claims.

With the exception of their jurisdictional argument (*i.e.*, that the Court lacks jurisdiction to even consider the Motion), Maschmedts' opposition to the Motion relies entirely on specific provisions in the Plan and Confirmation Order, and argues that those provisions explicitly excluded Maschmedts from the injunctions and releases contained within the Plan and

---

[10] ECF No. 194 at 13.

Confirmation Order.[11]  Maschmedts focus on defined terms found in the Plan, specifically, "Releasing Plaintiffs," and "Releasing Defendants" and contend that by definition they are excluded from those provisions that Movants claim bar the State Action.  Maschmedts also highlight that they were never a party to the Plan or Settlement Term Sheet, another defined term.  Like Movants, Maschmedts rely on paragraph 10 of the Confirmation Order, but highlight the first clause, "except as otherwise expressly permitted by the Plan and Confirmation Order", as excluding them from that paragraphs injunction.

> B.  **Resolution of the issues presented in the Motion implicates consideration and interpretation of the Plan and Confirmation Order.**

A close nexus exists where a proceeding requires interpretation of an order confirming a bankruptcy plan.  *Wilshire*, 729 F.3d at 1289.  Like in *Wilshire*, the "ultimate merits question depends in part on the interpretation of the confirmed Plan."  This implicates the Plan, as well as the Confirmation Order.  As explained in *Wilshire*, "interpretation" for purposes of the close nexus test broadly contemplates not only a plan, but also any confirmation order.  *Id*.  *Wilshire* relied on *Travelers Indemnity Company v. Bailey*, 557 U.S. 137, 151, 129 S.Ct. 2195, 174 L.Ed.2d 99 (2009), for the proposition that, "it is well recognized that a bankruptcy court has the power to interpret and enforce its own orders."  *Wilshire*, 729 F.3d at 1289.

Reconciliation of the parties conflicting interpretations of the Plan and Confirmation Order demands that the Court interpret both documents, in conjunction with the FAC.  Although the claims may be based on state law, whether Maschmedts may pursue those claims depends upon the terms of the Plan and Confirmation Order.  Thus, the briefing by the parties demonstrates that the parties need this Court's interpretation of the Plan, and Confirmation Order

---

[11] ECF No. 202 at 13.

to resolve their conflicting positions. Thus, notwithstanding Maschmedts' arguments to the contrary, this Court has "related to" jurisdiction to consider the merits of this post-confirmation matter. Specifically, to provide an interpretation of the Plan and Confirmation Order and determine whether the Maschmedts' claims in the State Action, are barred in whole or in part, by the injunctions, releases, and terms of the sale contained in the Plan and Confirmation Order.[12]

### C. Not only does this Court have jurisdiction to consider the Motion, interpretation of an Order confirming a plan is a core matter.

A bankruptcy court may enter final judgments and orders in core matters, but not in "non-core" matters. See *In Re Resorts Int'l, Inc.*, 372 F.3d 154, 162 (3rd Cir. 2004) (citing 1 *Collier on Bankruptcy*, ¶ 3.02[2], at 3-35 (15th ed. rev. 2003)). Plan confirmation is a core matter. 28 U.S.C. § 157(b)(2)(L). Further, "[e]nforcement and interpretation of orders issued in core proceedings are also considered core proceedings within the bankruptcy court's jurisdiction." *HHI FormTech, LLC v. Magna Powertrain USA, Inc.* (*In re FormTech Indus., LLC*), 439 B.R. 352, 357 (Bankr. D.Del. 2010). In this case, interpretation and enforcement of the Confirmation Order is a core proceeding. Further, proceedings between non-debtors involving the interpretation of rights under a sale order have been determined to be core proceedings. *See In re Petrie Retail, Inc.*, 304 F.3d 223, 229-230 (2nd Cir. 2002). Although the order to be interpreted here is the Confirmation Order, it was a sale order in substance, providing for the sale of all of Debtor's property, as well as other property in connection with the Plan. As a result, this Court concludes that although neither Maschmedts nor Movants are the debtor, consideration of the Motion remains a core proceeding.

---

[12] Both parties have approached this as an all or nothing proposition, arguing either that none of the claims are barred, or that all of the claims are barred.

**D. This Court will not exercise its discretion and abstain under 28 U.S.C. § 1334(c)(1)**

Abstention at this stage of the proceedings will not serve the interests of justice, comity with the state courts, or demonstrate respect for state law. Maschmedts urge this Court to abstain and, "return the case to the Montana Eleventh Judicial District Court, Flathead County, Montana where this litigation began in 2015," if the Court concludes that it has related to jurisdiction.[13] A court may exercise its discretion and choose to abstain for the following reasons:

> Nothing in this section prevents a [bankruptcy court] in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.

28 U.S.C. § 1334(c)(1). Maschmedts point to a series of factors in support of their argument, but neither of the factors identified, nor the reasons delineated at 28 U.S.C. § 1334(c)(1) persuade this Court that abstention is appropriate.

Since adjudication of the issues in the Motion turns in part on the scope and breadth of the releases, sale terms and the injunction in the Confirmation Order, this Court's interpretation of that Order is entitled to substantial deference. *In re Bernard L. Madoff Inv. Secs. LLC*, 740 F.3d 81, 87 n. 7 (2d Cir. 2014) ("The scope of an injunction turns upon the intent and effect of the bankruptcy court's order, and, thus, '[a] bankruptcy court's interpretation of its own order warrants customary appellate deference.'" (quoting *Casse v. Key Bank Nat'l Ass'n* (*In re Casse*), 198 F.3d 327, 333 (2d Cir.1999)). Given the recognition that the Court that issued the order is likely best equipped to interpret it, this Court has difficulty concluding that the interests of justice, comity, or respect for state law will be well served by asking the State Court to parse through and interpret the Plan and Confirmation Order. This is a task better suited for this Court,

---

[13] ECF No. 234 at 8.

and a burden that it should shoulder. As a result, permissively abstaining at this stage of the proceeding would not serve the interests of 28 U.S.C. § 1334(c)(1), so the Court declines to do so at this time.

## II. This Court's decision is not dictated by the outcome in the Removal Proceeding or the "Law of the Case" doctrine.

Maschmedts' arguments that this Court should reach the same conclusion as the District Court, or apply the law of the case doctrine are not persuasive. The issues presented to the District Court in the Removal Proceeding are distinguishable from the issues presented to this Court. In the Removal Proceeding, Movants sought to persuade the District Court that it had "related to" jurisdiction to consider the merits of the Maschmedts' complaint. Having considered *Pegasus*, the District Court concluded there was no close nexus for purposes of establishing "related to" jurisdiction that would permit the District Court to determine the merits of the Maschmedts' claims.

This Court is not being asked to decide the merits of the Maschmedts' claims. This Court is tasked with determining whether the Maschmedts' claims in the FAC, are barred in whole or in part, by the injunctions, releases, and terms of the sale contained in the Plan and Confirmation Order. These inquiries are fundamentally different. Not surprisingly given the different inquiries, this Court has relied heavily on *Wilshire, Wilshire's* distillation and reaffirmation of *Pegasus,* and *Wilshire's* reliance on the *Traveler's* decision, in reaching a different conclusion.

To the extent Maschmedts argue this Court is bound by the "law of the case doctrine," this Court disagrees. The law of the case doctrine involves adherence to an appellate court decision in future proceedings. *Herrington v. County of Sonoma*, 12 F.3d 901, 904 (9th Cir. 1993). There is no appellate court decision within this proceeding for this Court to follow.

15

## **CONCLUSION**

Applying the close nexus test as articulated in *Wilshire*, this Court concludes that Movants have established this Court has related to jurisdiction under 28 U.S.C. § 1334 for purposes of determining whether the Maschmedts' claims in the FAC are barred in whole or in part, by the injunctions, releases, and terms of the sale contained in the Plan and Confirmation Order; that the matter is core under 28 U.S.C. § 157; and, that consistent with those conclusions, this Court must review and interpret the Plan and Confirmation Order and determine which, if any, of Maschmedts' claims are the subject to the releases and injunctions, or otherwise barred by the Plan and Confirmation Order.

Having concluded, as a threshold matter, that this Court has the jurisdiction to hear and decide Movants' Motion, the Court now turns to the merits of Movants' Motion. At the hearing, the parties discussed the possibility of an additional hearing and/or briefing. The Court will grant the parties time to meet and confer on whether additional briefing and/or a hearing is necessary.

The Court is cognizant that this Memorandum of Decision may not address all of the issues raised in the parties' briefing, but a decision on jurisdiction is a prerequisite to any further ruling. Further, the Court recognizes that its decision may color the manner in which the parties consider the issues. Accordingly, for the reasons discussed above, the Court will enter a separate order providing as follows:

**IT IS ORDERED** that the Maschmedts' jurisdictional objection to the Movants' Motion is overruled; and this Court has "related to" jurisdiction under 28 U.S.C. § 1334 to determine whether the Maschmedts' claims in their First Amended Complaint, are barred in whole or in part, by the injunctions, releases, and terms of the sale contained in the Plan and Confirmation Order.

**IT IS FURTHER ORDERED** that the parties shall meet and confer prior to February 7, 2018. A telephonic status conference will be held on **Wednesday, February 7, 2018 at 11:00 a.m.**, and at that time the parties shall advise the Court whether they desire a ruling on the merits based on the briefing to date, would like additional briefing, and/or a hearing for purposes of submitting additional evidence or argument. To participate in the telephonic conference the parties shall, on the aforementioned date and time, dial into the Court's telephonic conferencing system at 858-812-0972; then when prompted enter Numeric Access Code 3000000#, and then enter 3100566#.

BY THE COURT:

Hon. Benjamin P. Hursh
United States Bankruptcy Court
District of Montana