# UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MONTANA

In re

**THE HOMESTEAD AT WHITEFISH LLC,**

Case No. **14-60353-BPH**

Debtor.

# MEMORANDUM OF DECISION

In this Chapter 11[1] case, the Court entered a Memorandum of Decision[2] ("Decision") and Order[3] on June 15, 2020 granting the "Motion for Order Enforcing Injunctions and Releases Contained in Confirmed Plan of Reorganization and Related Relief"[4] filed by K2M, LLC, GFY87, LLC, Great Northern Ventures, LLC, PMJ, LLC, Mark D. Kvamme and Paul Johannsen ("Respondents"). On June 29, 2020, parties-in-interest Don and Emily Maschmedt ("Maschmedts") filed a Motion to Alter or Amend the Court's Order ("Motion").[5] Respondents filed an Opposition to the Motion on July 13, 2020 ("Response").[6] Maschmedts filed a Reply to the Response on August 7, 2020 ("Reply").[7] At a hearing held August 19, 2020, the Court agreed to hold the Motion in abeyance.[8] The parties were given through September 25, 2020 to file a

---

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, all "Rule" references are to the Federal Rules of Bankruptcy Procedure, and all "Civil Rule" references are to the Federal Rules of Civil Procedure.
[2] ECF No. 289.
[3] ECF No. 290.
[4] ECF No. 194.
[5] ECF No. 294.
[6] ECF No. 301.
[7] ECF No. 321.
[8] ECF No. 344.

status report regarding settlement discussions.[9] The parties filed a status report on September 24, 2020.[10] The Court conducted a status conference on October 7, 2020.

The Court has reviewed the Motion, Response, and Reply. Based on its reconsideration of the record developed before the Court, the following constitute the Court's further findings of fact and conclusions of law to the extent required by Rules 7052 and 9014.

## BACKGROUND

As explained in the Court's Decision, Debtor's Second Amended Plan[11] ("Plan") provided for the sale of Debtor's assets, including assets owned by a homeowner's association to respondent GFY87, LLC ("GFY87"). The sale was free and clear of claims under § 363. In addition, the Plan contemplated GFY87, as the "Plan Funder," would acquire the real property within the failed real estate development known as "Homestead at Whitefish," from 6 of the 7 individual lot owners. Maschmedts owned a singular lot in the development, Lot 1, and were the only individual lot owners to opt out of the third-party sales process.

Debtor's Plan was confirmed on November 7, 2014.[12] The Plan included a release, injunction and exculpation provisions. Approximately a year after confirmation, Maschmedts filed suit in state court. Eighteen months after filing suit, Maschmedts filed their First Amended Complaint asserting a litany of claims against Debtor and Respondents seeking monetary and

---

[9] The Court's decision to hold the Motion in abeyance was intended to provide the parties additional time to work toward a resolution of the issues raised in the Motion, Response, and Reply. However, the joint status report filed September 24, 2020 at ECF No. 349 establishes that the entirety of the parties' communication during the 37 days afforded them consisted of a single email from Maschmedts' counsel sending a proposed amended state court Complaint and a letter from counsel for Respondents to counsel for Maschmedts' containing objections to the proposed Complaint.

[10] ECF No. 347.

[11] ECF No. 130

[12] ECF No. 162.

other relief. And so began the three-and-a-half-year detour before this Court.[13]

Over the course of this litigation, Maschmedts have endeavored to: (1) persuade this Court that it lacks jurisdiction to interpret its own Confirmation Order, or enforce the release, injunction and exculpation provisions found in the Plan; and, (2) misdirect the Court and urge it to consider certain provisions in the Plan and Confirmation Order in isolation without consideration of the Plan as a whole, the underlying transactions contemplated by the Plan, and context surrounding the formulation of the Plan. To date, Maschmedts have been unsuccessful, and their credibility with this Court continues to wane. Although no substitute for its Decision, this Court's analysis of the Motion begins with a brief review of the First Amended Complaint, its underlying Decision that is the basis of the reconsideration Motion, the Motion, Response and Reply. Next, it reconsiders the Plan, Confirmation Order and its Decision.

**A.  Maschmedts First Amended Complaint.**

Unlike its initial complaint, Maschmedts' First Amended Complaint added Debtor as a defendant and alleged that Debtor, along with Respondents, were liable for damages based on the following causes of action:

(1) two declaratory judgment actions;
(2) one alter ego/veil piercing claim;
(3) one claim for injunctive relief;
(4) one claim for breach of contract;
(5) one claim for breach of the implied covenant of good faith and fair dealing;
(6) one count for negligent misrepresentation;
(7) two counts for negligence;
(8) one count of actual fraud;
(9) one count of constructive fraud;
(10) one count of unjust enrichment;
(11) one count of conversion; and
(12) one count for unfair trade practices and consumer protection.

---

[13] The Court will not recite all background facts related to this proceeding. It has already done so in its Memoranda of Decision at ECF Nos. 238 and 289.

3

Each of Maschmedts' fourteen counts were based in whole or in part on Respondents' refusal to recognize their alleged property interest in certain Amenities.

Maschmedts' First Amended Complaint rests on three premises unsupported by either the facts or the law, as explained in the Decision. The First Amended Complaint uses each as a springboard to enable Maschmedts' prepetition claims against Debtor to skip past the existence of Debtor's bankruptcy and land as post confirmation claims against Respondents and Debtor. In doing so, Maschmedts conveniently leap over provisions in the Plan and Confirmation Order that prohibit these claims. This maneuver has landed them on increasingly shaky ground. Based on this Court's analysis of the Plan and Confirmation Order as explained in the Decision, the claims asserted by Maschmedts in the First Amended Complaint are prohibited by the Plan's release, injunction and exculpation provisions.

### B.  The Memorandum of Decision.

The Court's Decision enforced the release, injunction, and related terms contained in the Plan filed by Debtor and confirmed on November 7, 2014.[14] Procedurally, the Decision ordered Maschmedts to dismiss their First Amended Complaint filed in state court because it directly violated the release and injunction terms of the Plan. The Court determined that each of the claims asserted in the First Amended Complaint was based on, or related to, prepetition marketing materials provided to Maschmedts by Debtor and its agents, as well as prepetition representations made by Debtor and its agents.

After considering each of Maschmedts' claims, the Court determined that each was a brazen attempt by Maschmedts to recharacterize their prepetition claims against Debtor as post-petition claims against Respondents following their acquisition of the Debtor's assets under the

---

[14] ECF No. 129.

Plan. In reaching its decision, the Court undertook an exhaustive analysis of the impact of the Plan and Confirmation Order on Maschmedts' property rights associated with their ownership of Lot 1 in Debtor's failed real estate project, the Homestead at Whitefish.

The Court carefully analyzed Paragraph 35 of the Confirmation Order ("Paragraph 35"). It determined that it "narrowly protect[ed] a limited set of real property interests" retained by Maschmedts' post-confirmation.[15] Specifically, the Court determined Paragraph 35 was not ambiguous and that it functioned as a "limited…preservation of Maschmedts' fee simple interest in their real property and the property rights granted or evident in the Covenants."[16] Simply stated, the Court held that Paragraph 35 served two purposes. First, it excluded Maschmedts from the compulsory sales process described in the Plan. Second, it preserved their fee simple interest in Lot 1 and any rights Maschmedts enjoyed at the time of confirmation based upon: 1) their Deed; 2) the Amended Plat; and 3) the Covenants.[17] Based on the Court's conclusions, the Decision directed Maschmedts to dismiss their First Amended Complaint.

### C.  Maschmedts' Motion.

Although not entirely clear in their original Motion,[18] Maschmedts' Reply[19] and the statements by their counsel at the hearing on August 19, 2020[20] make clear that their requested relief is two-fold. First, Maschmedts request that the Court reconsider and alter its Order "to give effect to the true intent of Paragraph 35."[21] Maschmedts argue that the Court's Decision "fail[ed]

---

[15] ECF No. 289 at 53.
[16] *Id*. at 39–40.
[17] *Id*. at 40.
[18] ECF No. 294.
[19] ECF No. 321.
[20] ECF No. 341.
[21] ECF No. 294 at 3.

adequately to consider and to give effect" to the various release provisions in the Plan.[22]

Specifically, Maschmedts argue that reconsideration is necessary because the Court "failed to

give proper effect" to the release provisions which, "[i]n Maschmedts' view," was "intended to,

and as a textual matter, did, excuse Maschmedts' from the limitations of the release and

discharge provisions contained in the plan," particularly those located in Article VIII, §§ A, F,

and H in the Plan.[23] Although the Motion also sought alteration of the Decision to "specifically

defin[e] Maschmedts' rights to utilize roads, trails, and common area as described in COS

16496…and the Preliminary Plat," counsel for Maschmedts withdrew this request at the August

19, 2020 hearing. As such, the Court will not define those rights here.[24]

Second, Maschmedts request "clarification and guidance" regarding the appropriate

scope of any state court litigation Maschmedts may pursue related to their property rights.[25]

Maschmedts argue that "[t]he Court's strongly-worded reprimand and instructions" in its

Decision, which directed Maschmedts to dismiss the Complaint filed in state court, "leaves

Maschmedts between a rock and a hard place, uncertain about how they can proceed to

vindicate" the scope of the remaining property rights associated with their ownership of Lot 1.[26]

Finally, Maschmedts "request guidance from the Court with respect to the enforceability of the

---

[22] ECF No. 321 at 4.

[23] *Id*. at 4–5.

[24] ECF No. 341. The Motion also requests alteration or amendment of the Decision to "reflect that claims which exist in the Amended Complaint relating to the protection of Maschmedts' rights need not be dismissed" in the State Court Action. Additionally, the Motion requests alteration or amendment "to clarify the enforceability of the [CCRs] or, in the alternative, to state that the issue should be resolved by the Montana Eleventh Judicial District located in Flathead County." Maschmedts Reply makes clear that they merely seek clarification on these issues. As such, they will be addressed in that portion of this Memorandum of Decision. To the extent a specific ruling as to alteration or amendment regarding these issues is necessary, they are denied.

[25] ECF No. 321 at 8.

[26] *Id*.

6

covenants, conditions, and restrictions as set forth in the [CCRs]."[27]

### D.  Respondents' Brief in Response.

Respondents argue that the Court need not reconsider or provide additional clarification regarding its Decision because Maschmedts have failed to establish grounds for such relief as required by Civil Rule 59.[28] Respondents agree that the Decision does not prevent Maschmedts from pursuing litigation in state court, but contend that the scope of that litigation is far narrower than Maschmedts assert. Respondents argue that any state court litigation should be confined to a judicial determination of what real property rights Maschmedts enjoy under their Deed and the recorded "Amended Plat of Lot 1 & Open Space "A" of the Homestead at Whitefish Phase 1" (the "Amended Plat") and the "Plat of the Homestead at Whitefish Phase 1" (the "Homestead Plat"). [29]

After conducting a hearing on Maschmedts' Motion, the Court acknowledged that its Decision did not explicitly state whether dismissal of Maschmedts' First Amended Complaint should be with or without prejudice. Based upon the agreement of the parties at the hearing, the Court agreed to hold Maschmedts' Motion in abeyance while the parties worked to resolve the issues in the Motion, Response, and Reply and to permit Maschmedts to prepare a proposed Second Amended Complaint that conformed with the Court's Decision.

### E.  The Second Amended Complaint.

The parties filed a Joint Status Report on September 24, 2020, which included Maschmedts' Second Amended Complaint as an exhibit.[30] While drastically different from either

---

[27] ECF No. 294 at 4.
[28] ECF No. 301 at 2.
[29] *Id.* at 6.
[30] ECF No. 347.

the original or First Amended Complaint, the Second Amended Complaint again included allegations and causes of action that were incongruent with this Court's Decision, the provisions of Debtor's confirmed Plan, and this Court's Confirmation Order. For example, the Second Amended Complaint alleges that, post-confirmation, Respondents "began to restrict Maschmedts' use of development by limiting Maschmedts' enjoyment of, and access to, certain roads, trails, common areas, and amenities." Similarly, the Second Amended Complaint alleges that GFY87, LLC "continues to limit and infringe Maschmedts' rights…by refusing Maschmedts access to common areas, to trails and paths, and to roads except as strictly necessary for ingress and egress to [Lot 1]." The inclusion of a reference to "amenities" in the Second Amended Complaint troubles the Court given its prior Decision.

## ANALYSIS

Civil Rule 59 applies in bankruptcy proceedings pursuant to Rule 9023. Civil Rule 59(e) governs motions to alter or amend judgments and applies with equal force to motions for reconsideration. Civil Rule 59 offers the court a chance "to rectify its own mistakes in the period immediately following" its decision. *Banister v. Davis*, 140 S. Ct. 1698, 1703 (2020) (quoting *White v. New Hampshire Dept. of Employment Security*, 455 U.S. 445 (1982). However, a court also enjoys broad discretion to grant or deny relief under Civil Rule 59(e). *In re Blixseth*, 463 B.R. 896, 904 (Bankr. D. Mont. 2012). Reconsideration under Civil Rule 59(e) is appropriate if: 1) the court is presented with newly discovered evidence; 2) the court committed clear error or made an initial decision that was manifestly unjust; or 3) there is an intervening change in controlling law. *S.E.C. v. Platforms Wireless Intern. Corp.*, 617 F.3d 1072, 1100 (9th Cir. 2010). "A Rule 59(e) motion is an extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources." *Wood v. Ryan*, 759 F.3d 1117, 1121 (9th Cir. 2014).

Thus, "mere disagreement with the court's ruling is not a proper basis for seeking reconsideration under Civil Rule 59(e)." *In re Bayati*, 2015 WL 6470522 *5 (9th Cir. B.A.P. 2015).

## I.      Maschmedts' Request for Reconsideration.

Maschmedts contend that reconsideration is appropriate in this case "to correct a clear error and avoid a manifest injustice."[31] "Clear error" requires a showing that the Court's original decision is "unquestionably erroneous." Black's Law Dictionary (11th ed. 2019). Maschmedts argue that the Court failed to adequately consider the definition of "Releasing Plaintiffs" in the Plan as well as the provisions set forth in Article VIII, §§ (A), (F), and (H) of the Plan. According to their argument, "the interrelationship between these exclusions both was intended to, and as a textual matter, did, excuse Maschmedts from the limitations of the release and discharge provisions contained in the Plan."[32] The Court finds no clear error in its Decision that merits alteration or amendment under Civil Rule 59.

### A.  Plan Terms and Provisions.

Article I, § (A)(79) of the Plan defines the term "Releasing Plaintiffs" as it is used in the Plan. Maschmedts correctly note they are specifically excluded from the definition. Aside from its definition in Article I, the term "Releasing Plaintiffs" is used six times throughout the Plan. The Court declines to turn a blind eye to those specific instances where a clearly defined term is used and where it is not.

Article VIII of the Plan is entitled "Settlement, Release, Injunction, and Related Provisions." Article VIII, § A ("Subsection A") immediately follows this title and is subtitled

---

[31] ECF No. 321 at 4.
[32] *Id*. at 5.

9

"Compromise and Settlement of Claims, Interests, and Controversies." Subsection A provides that "except as otherwise specifically provided for in the Plan…the distributions, rights, and treatment that are provided in the Plan *shall be in complete settlement, compromise, and release…of Claims, Interests, and Causes of Action of any nature whatsoever*" including those relating to "the Debtor or any of its assets or properties." Notably, the term "Releasing Plaintiffs" is not used once in the entire paragraph. Additionally, the paragraph uses the defined terms "Claims," "Interests," and "Causes of Action." The defined term "Causes of Action" encompasses virtually any potential legal or equitable claim or cause of action that could be asserted by a party-in-interest. Unlike "Releasing Plaintiffs," its definition includes no exclusion for Maschmedts.

Article VIII, § F ("Subsection F") is entitled "Plaintiff Release." It provides that the "Releasing Plaintiffs" shall provide a full release to each of the "Releasing Defendants" and their agents "from any and all causes of action and any other debts, obligations, rights, suits, damages, actions, derivative claims, remedies, and liabilities whatsoever, whether known or unknown." Subsection F differs from Subsection A in two ways. First, its provisions are expressly limited to the class of "Releasing Plaintiffs," evidenced by the use of the defined term three times. Second, Subsection F does not use the defined terms "Claims," "Interests," or "Causes of Action."

Article VIII, § H ("Subsection H") is entitled "Injunction." Similar to Subsection A, Subsection H includes language clarifying that it applies "except as otherwise provided in the plan or confirmation order." Subsection H is intended to work hand-in-hand with the release provisions in Article VIII (e.g. Subsection A and Subsection F) and permanently enjoins all parties-in-interest from commencing or continuing litigation against the Debtor or its successors. Subsection H concludes by stating that its injunction provisions do not prevent any entity from

obtaining any benefit provided to them under the Plan. Again, the defined term "Releasing Plaintiffs" is absent throughout all of Subsection H.

### B.  Applicability of Article VIII to Maschmedts.

The logic of Maschmedts' contention that nothing in Article VIII precludes them from "pursu[ing] claims without regards to the injunction" is unfounded and not persuasive. Simply stated, Maschmedts argue that because they are excepted from the definition of "Releasing Plaintiffs," they cannot be bound by any release or injunction provision in Article VIII.

In analyzing Maschmedts' contentions, the Court applies Montana law regarding contract interpretation, just as it did in its Decision. Under Montana law, courts must interpret various contractual terms so as to make the contract as a whole "lawful, operative, definite, *reasonable*, and capable of being carried into effect." Mont. Code Ann. § 28-3-201 (emphasis added). Additionally, courts must consider the contract as a whole and avoid reading provisions in isolation "so as to give effect to every part if reasonably practicable, each clause helping to interpret the other." Mont. Code Ann. § 28-3-202. Based on the Court's reading of the provisions relied on by Maschmedts, and its familiarity with the underlying facts leading to their inclusion in the Plan, the Court cannot determine that it committed any clear error in determining that Maschmedts were bound by the release in Subsection A, and injunction in Subsection H of Debtor's confirmed Plan.

As the Court noted in its Decision, the Plan was intended to, and did, "effectuat[e] a broad release and settlement of all claims" including those held by Maschmedts.[33] Article VIII, by its terms, makes this fact clear. Of all the provisions relied on by Maschmedts, only one (Subsection F), uses the defined term "Releasing Plaintiffs." Notably, Subsection F also does not

---

[33] ECF No. 289 at 12.

use defined terms like "Cause of Action." Instead, it lists a litany of terms, most of which also fall under the umbrella definition of "Cause of Action." The use of "Releasing Plaintiffs" and the absence of the defined term "Cause of Action" in Subsection F leads the Court to conclude that this was intentional. The use of the term "Releasing Plaintiffs" signals that Subsection F does not apply to Maschmedts. This is further evidenced by the fact that the paragraph does not use the term "Causes of Action." Had it done so, using one defined term that excepts Maschmedts ("Releasing Plaintiffs") and one that does not ("Causes of Action"), Subsection F would be confusing and/or ambiguous.

Unlike Subsection F, Subsection A does not use the term "Releasing Plaintiffs" and does use the term "Cause of Action." The Court determines this was also intentional. By not limiting Subsection A to "Releasing Plaintiffs" alone, and by contemplating all "Cause[s] of Action," whether held by "Releasing Plaintiffs" or not, Subsection A was intended to, and did, "cas[t] the broadest possible net over the prepetition activities and transactions of the Debtor and any conduct that may form the basis of a 'Cause of Action'" whether held by Maschmedts or any other party-in-interest.[34]

Subsection H works hand-in-hand with Subsection A's broad release. Similarly, it does not use the term "Releasing Plaintiffs" anywhere in its 551 words. This language was also intentional. It has the effect of permanently enjoining all parties, whether "Releasing Plaintiffs" or not, from filing suit or pursuing causes of action within the scope of Subsection A against an "Exculpated Party" which includes Respondents. The similarities between Subsection A and Subsection H cannot be ignored. Neither limited its provisions to "Releasing Plaintiffs." It follows then that each is intended to apply to all parties-in-interest, including Maschmedts.

---

[34] *Id*. at 13.

12

Maschmedts contrary interpretation is an unreasonable impracticable one that the Court declines to adopt. *See* Mont. Code Ann. §§ 28-3-201, 202.

Setting aside the textual analysis, at the August 19, 2020 hearing, the Court noted that Subsection A was included in the Debtor's original plan filed on July 29, 2014.[35] It also noted that the language in Subsection A in the confirmed Plan was nearly identical to that in the original one. It then asked counsel for Maschmedts whether Maschmedts would have been bound by its release provision had the original plan been confirmed. Counsel responded affirmatively. The Court then discussed with counsel the various negotiations that occurred between the circulation of the original plan and confirmation of the Plan. One such negotiation led to Debtor reaching an agreement with every homeowner except Maschmedts to rescind their real estate purchase and sell their individual lots to the Plan Funder. Subsection F corresponds to these negotiations and homeowners. Since Maschmedts were not selling their real estate to the Plan Funder, they were excluded from Subsection F. However, that limited exclusion is not synonymous with the far broader exclusion from Subsection A, and Subsection H of the Plan that Maschmedts continue to allege.

### C.      Paragraph 35 of the Confirmation Order.

The confirmed Plan contemplated two purchases by the Plan Funder. Under the first, the Plan Funder purchased all properties owned by third parties besides Maschmedts within the former Homestead at Whitefish, as noted above. Under the second, the Plan Funder acquired all of Debtor's property.[36] These two sales effectively allowed the Plan Funder to acquire all property in the Homestead at Whitefish and effect a broad rescission of the failed development,

---

[35] ECF No. 57.
[36] ECF No. 289 at 10.

aside from Maschmedts' Lot 1. Maschmedts elected not to sell their property to the Plan Funder and filed a "limited objection" to confirmation based on their unwillingness to do so. Their limited objection was resolved by stipulation, which was memorialized in Paragraph 35 of the Court's Confirmation Order.[37] It provided:

> Preservation of Property Rights. *Without limiting the effect of the relief provided in this Order and the Plan*, nothing contained herein is intended to, or shall, limit or expand the property rights of Don and Emily Maschmedt with respect to [Lot 1], whether pursuant to the Declaration of Covenants, Conditions, Restrictions and Easements for the Homestead at Whitefish or otherwise.[38]

As noted in the Decision, nothing in Maschmedts "limited" objection challenged the settlement, compromise, release, or injunction terms contained in Article VIII of the Plan.[39] Their objection was resolved, and Maschmedts entered into a stipulation with the Debtor that was memorialized in Paragraph 35 of the Confirmation Order.[40] This Court refused to read Paragraph 35 as encompassing more than the "limited" objection it was written to resolve in its Decision and will not do so now on reconsideration. The purpose of the stipulation, preserved by Paragraph 35, was simple–it assured Maschmedts their interest in Lot 1 would neither be limited nor expanded. It did not carve Maschmedts out of the Plan entirely, and certainly not from the release and injunction provisions contained in Subsection A and Subsection H.

Nothing in Maschmedts' Motion has caused this Court to conclude that its Decision was entered in error or manifestly unjust. Maschmedts failed to offer any evidence or argument that would support this Court's adoption of their conclusion that they were not bound by the Plan's

---

[37] ECF No. 162 at 30.
[38] *Id*. (emphasis added).
[39] ECF No. 142 ("Don & Emily Maschmedt…object to Debtor's Second Amended Plan to the extent that it purports to compel Maschmedts to sell their property…or to abridge Maschmedt's vested rights in common areas and amenities pursuant to the [Covenants] to which their purchase of Lot 1 was subject.").
[40] ECF No. 65.

broad release and injunction provisions found in Subsections A and H. This Court's interpretation of the Plan and Confirmation Order is entirely consistent with Maschmedts' objection at the time. The confirmed Plan and Confirmation Order allowed Maschmedts to keep only what they objected to losing in their "limited" objection. They were assured that whatever interests they had at confirmation would neither be limited nor expanded. They retained Lot 1 and, in exchange, agreed to release the Debtor from any "Cause of Action" they could assert. They also became enjoined from pursuing those claims against the Respondents as "Exculpated Parties." Their mere disagreement with this Court's conclusion is not grounds for reconsideration under Rule 59(e). *See Bayati*, 2015 WL 6470522 *5. Thus, the "reconsideration" portion of the Motion is denied.

## II.   Maschmedts' Request for Clarification.

The second portion of Maschmedts' requested relief generally seeks clarification of their property rights in the "roads, trails, and common area" described in Certificate of Survey 16496 and any rights stemming from the Declaration of Covenants, Conditions, Restrictions, and Easements recorded in 2005 (the "Covenants").[41] At the hearing on August 19, 2020, counsel for Maschmedts also sought clarification as to whether this Court's directive that Maschmedts dismiss their First Amended Complaint required dismissal with or without prejudice.

### A.  Dismissal with Prejudice.

While the Court recognizes that its Decision was silent as to whether Maschmedts were directed to dismiss their First Amended Complaint with or without prejudice, it is confused by Maschmedts' concern on this issue. Under both Fed. R. Civ. P. 41(b) and Mont. R. Civ. P. 41(b), an order of dismissal "operates as an adjudication on the merits" (i.e. is *with* prejudice) "unless

---

[41] ECF No. 294 at 3–4.

the dismissal order states otherwise." *See also Semtek Intern. Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 505 (2001) (providing that "with prejudice" is simply shorthand for "an adjudication upon the merits" as used in Fed. R. Civ. P. 41(b)). Accordingly, the Court's Decision directed Maschmedts to dismiss the First Amended Complaint was with prejudice, even if not explicitly stated.

The Court has inherent authority to grant or deny the other relief requested by Maschmedts pursuant to § 105(a)[42] and will provide additional clarity regarding the scope of Maschmedts' property rights now. However, it notes at the outset that Maschmedts have not produced any evidence indicative of an interest in the property Respondents have refused to provide them access to. It also makes clear that <u>any</u> attempt by Maschmedts to pursue litigation in state court based on prepetition conduct by the Debtor (including an action against any Respondent either as an agent of Debtor or under a theory of successor liability) or on an alleged interest in the Plan Funder's property not evidenced by a written instrument in accordance with Montana law, would clearly violate the Decision and related Order.

**B. The Untenable Premises.**

**1. "Maschmedts obtained a property interest in Amenities."**

The singular thread connecting Maschmedts' litigation before this Court and the state court is an alleged interest in property formerly owned by Debtor that was acquired and is currently owned by GFY87. The evidence shows that their alleged interest is nothing more than a prepetition claim based solely on prepetition marketing materials and representations made by

---

[42] Section 105(a) provides in relevant part

The Court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title.

Debtor and/or its agents. Maschemdts' claims are not supported by any instrument that ordinarily corresponds to the acquisition of an interest in real property. Neither their Deed, Covenants, Amended Plat, nor the Homestead Plat lend even a scintilla of support to their claims.

The only reasonable interpretation of Paragraph 35 that is consistent with Debtor's broader Plan of reorganization is that Paragraph 35 served the limited purpose of preserving Maschmedts' cognizable property interests expressly set forth in the Deed, Covenants, Amended Plat, and Homestead Plat. It did not preserve causes of action related to marketing, or other representations of the Debtor or is agents. This Court's Decision reached this same conclusion. Maschmedts have failed to establish this Court erred. At its best, Maschmedts Motion reflects their continuing disagreement with the Court. Maschemdts' mere disagreement does not amount to clear error. *See* Fed. R. Civ. P. 59(e).

At the outset, this Court noted that Maschmedts have boldly proceeded on a series of mistaken and untenable premises. The first of these premises, that Maschmedts' obtained a property interest in certain Amenities owned by Debtor based on marketing materials and representations made by Debtor and/or its agents to Maschmedts is demonstrably false.[43] The only evidence before this Court that lent credence to this contention was Don Maschmedts' self-serving testimony and a June 15, 2015 letter authored by his counsel that was internally contradictory. As the Court explained in its Decision, Don Maschmedts' understanding of his rights was based on nothing more than his own assumptions.[44] Further, his counsel's letter had no factual basis to support Maschmedts' demand that GFY87 transfer or convey to them a tenancy in common interest.

---

[43] The Court incorporates the defined term "Amenities" as set forth in its Memorandum of Decision at ECF No. 289.
[44] ECF No. 289 at 36.

Both in the underlying litigation and on reconsideration, Maschmedts have failed to bring to this Court's attention any evidence, aside from prepetition marketing materials and statements by Debtor or its agents, that establishes Maschmedts had an interest in the Amenities on confirmation. This is unsurprising. All the evidence in the record leads the Court to the opposite conclusion, even the evidence offered by Maschmedts themselves. For example, their counsel's demand in his June 12, 2015 letter that Respondents convey or transfer to his clients, *a tenancy in common interest* in the Lodge, Barn and Gate House (each an Amenity Maschmedts already assert an interest in) can only be construed as an admission by counsel that his clients did not have such rights on the petition or confirmation date. If Maschmedts had a prepetition property interest in the Amenities or the Common Area, there would be no need for Respondents to convey to Maschmedts a *tenancy in common* interest in the same property post-petition.[45] If Maschmedts had obtained these rights pre-petition as they contend, some instrument would evidence such a claim because "[a]n estate or interest in real property…may not be created…otherwise than by…a conveyance or other instrument in writing." *See* Mont. Code Ann. § 70-20-101.

As explained in the Decision,[46] Maschmedts purchased Lot 1 and received a Deed from the Debtor. The Deed[47] conveyed Lot 1 of the Amended Plat of Lot 1 & Open Space "A" of the Homestead at Whitefish Phase 1, along with a driveway easement shown on the exhibit incorporated by reference into the Deed. The Amended Plat of Lot 1 & Open Space ("Amended Plat") shows that, at the time of purchase by Maschmedts, Lot 1 was "[s]ubject to and together

---

[45] ECF No. 262-8.
[46] *See* ECF No. 289 at 27–31 for a more detailed discussion of the documents associated with Maschmedts' acquisition of Lot 1.
[47] ECF No. 260-2.

with" 60 foot private road easements that allow Maschmedts to access their property and

"subject and together with" equestrian and pedestrian trail easements shown on the Amended

Plat.[48] An examination of the Deed establishes that Maschmedts' bundle of rights when they

acquired the property included a fee simple interest in Lot 1 (within the actual boundaries

depicted on the Amended Plat), a driveway easement, the 60 foot private road easement for

ingress/egress,[49] and the equestrian and pedestrian trail easement depicted on the Amended Plat.

      Maschmedts acquired Lot 1 subject to the Covenants. The operative covenants at the time

were the Covenants[50] recorded in 2005, almost 2 years before Maschmedts ever acquired Lot 1.

According to the Covenants, Maschmedts could access and enjoy permissive use of the

"Common Area" defined in the Covenants as:

> All private road and utility easements, utility easements, equestrian/pedestrian trail
> easements, and all other easements of any kind shown on Certificate of Survey 16496,
> records of Flathead County, Montana.[51]

However, the Covenants also permitted Debtor to "terminate, extend, modify, amend, or revoke"

the Covenants, in whole or in part, during the period of "Declarant Control" in effect at the time

Debtor filed for bankruptcy.[52] After the period of "Declarant Control," the Covenants could be

terminated, extended, modified, amended, or revoked with the consent of Owners holding 67%

---

[48] ECF No. 294-1. Neither party disputes that Maschmedts continue to have rights in Lot 1, the driveway easement, the private road easement, or the equestrian/pedestrian trail easements shown on the Amended Plat. *See* ECF No. 301 at 1-3.

[49] Respondents do not dispute that Maschmedts have rights in the private road easement. However, Respondents and Maschmedts are in the process of negotiating a "road maintenance agreement" for the care maintenance of the private roads. If this negotiation is unsuccessful, nothing in this Memorandum of Decision or the Court's prior Decision precludes the parties from litigating this issue in Montana state court.

[50] *See* ECF No. 262-4.

[51] *Id*. at 3.

[52] *Id*. at 51.

of the votes in "The Homestead at Whitefish Association."[53] The "Homestead at Whitefish Association" included Debtor and "any successor of that entity by whatever name."[54]

Finally, the Covenants provide that Debtor was free to assign its rights under the Covenants "to any successor who takes title to all or part of the [Homestead at Whitefish] in a bulk purchase."[55] This language expressly contemplates a potential successor to Debtor (such as the Plan Funder in this case) and permits that successor to exercise the same rights and responsibilities under the Covenants as Debtor did, including the right to modify, amend, terminate, or revoke the Covenants during the period of Declarant Control.

### 2. "The Plan preserved their alleged interests."

Maschmedts' second premise that "Debtor's confirmed Plan preserved their alleged interest," is similarly false. The Deed expressly provided that Maschmedts' property rights were subject to the Covenants. Paragraph 35 allowed Maschmedts to retain the same property rights they enjoyed prepetition – those rights actually evidenced by something more than Don Maschmedts' assumptions and a letter authored by his counsel. Indeed, Montana law requires an instrument in writing to create an interest in real property. *See* Mont. Code Ann. § 70-20-101 ("An estate or interest in real property…may not be created…otherwise than by…a conveyance *or other instrument in writing*.") (emphasis added). However, Paragraph 35 did not affect the right of Debtor (or the Plan Funder as a successor entity) to terminate, revoke, alter, or amend the Covenants.

The Deed expressly provided that Maschmedts' Lot 1 was subject to the Covenants. The Covenants expressly provided that they were subject to termination, revocation, or alteration.

---

[53] *Id*.
[54] *Id*. at 7.
[55] *Id*. at 53.

Reconsidering its Decision, this Court is not persuaded that it erred. Paragraph 35 should not be construed as a prohibition on any successor declarant's termination, revocation, or alteration of the Covenants. If it were construed as such a prohibition, it would impermissibly "expand the property rights of Don and Emily Maschmedt" by establishing perpetual interests in real property that the original Covenants did not contemplate, much less provide, the Maschmedts. Such an expansion would directly violate Paragraph 35's terms. Paragraph 35 did no more than preserve the property rights set forth in the Deed and Covenants explained above. [56]

### 3. "The Plan preserved Maschmedts right to seek monetary damages against Debtor and Respondent for their pre-petition claims."

Subsections A and H prohibit Maschmedts claims for monetary damages against Debtor and Respondents. Maschmedts' legal theory and claims have been flawed from the outset. Maschmedts read Paragraph 35 broadly and disregard Subsections A and H in their entirety. In its Decision this Court outlined the claims and allegations in the First Amended Complaint and concluded that Maschmedts' counsel's letter of June 12, 2015 was "simply a thin veneer applied to Maschmedts' prepetition claims in order to disguise those claims and avoid the narrow reading of Paragraph 35."[57] To illustrate the problems with the positions taken by Maschmedts, one need not look farther than the relief sought in the First Amended Complaint.

If this Court were to construe the Plan and Confirmation Order as Maschmedts have

---

[56] On July 9, 2020, the Plan Funder terminated and revoked the Covenants upon written consent of 97.5% of the lot owners. *See* ECF No. 301-A. Respondents GFY87 and K2M collectively hold 97.5% of the votes in the ad hoc Homeowners' Association. This evidence was not before the Court when it issued its underlying Decision and Order. However, it notes now that such revocation appears consistent with the procedures outlined in the Covenants. Nonetheless, to provide Maschmedts with the additional clarification they seek, it notes that a very limited declaratory action regarding the impact of this revocation on Maschmedts' ownership of Lot 1 would not conflict with its Decision.

[57] ECF No. 289 at 46.

urged, Maschmedts would be permitted to disregard Subsections A and H, as well as the exculpation provision in the Plan. Further, Paragraph 35 would be rendered meaningless because Maschmedts would be permitted to proceed with the First Amended Complaint which, in essence, seeks the perpetuation of the development of the Homestead at Whitefish for the benefit of its sole remaining lot owner, the Maschmedts, as if Debtor's bankruptcy and the confirmed Plan never occurred.

Under Maschmedts' theory, the Plan Funder not only acquired Debtor's assets, but also the privilege of enduring future litigation and incurring unspecified money damages. Their theory also dictates that, by purchasing Debtor's assets, the Plan Funder assumed some unspecified duty to provide for Maschmedts' sole benefit a concierge service, a lodge (to be built) for their use, access to cabins, a business center, stables for horses, access to a second lodge, "Little Bootjack Lodge," access to Chinook Lake, and the use of snowmobiles and ATVs in perpetuity.[58] This is a fiction that this Court can no longer indulge. It has extended to Maschmedts and their counsel the benefit of the doubt, but having reconsidered its Decision, it is convinced that to preserve the intent and transactions contemplated under the Plan, and give effect to Subsections A, H, Paragraph 35, and the other terms of the Plan and Confirmation Order, Maschmedts must dismiss the First Amended Complaint.

This Court cannot unwind and parse through the claims in the First Amended Complaint to separate the impermissible claims from those that may be salvageable. All this Court can do is consider the First Amended Complaint drafted by Maschmedts and consider whether it violates the Plan and Confirmation Order. It has done so and concludes that the First Amended Complaint clearly violates both the Plan and Confirmation Order. It has also endeavored to

---

[58] *See* First Amended Complaint ¶ 51.

provide Maschmedts with the clarification they seek. Based on the clarification this Decision provides, Maschmedts may argue that they should be given an opportunity to amend their First Amended Complaint yet again. However, this Court is convinced that providing Maschmedts with another opportunity to amend their First Amended Complaint would be a futile exercise used by Maschmedts as a subterfuge in furtherance of their failed amenity theory.[59] Accordingly, the First Amended Complaint must be dismissed with prejudice.

## CONCLUSION

Based on the foregoing, the Court will enter a separate Order denying Maschmedts' Motion for Relief under Rule 9024 and directing them to dismiss the First Amended Complaint.[60]

Dated December 17, 2020.

BY THE COURT:

Hon. Benjamin P. Hursh
United States Bankruptcy Court
District of Montana

---

[59] This is particularly true in light of the Court's recent decision to hold this matter in abeyance while the parties drafted the Second Amended Complaint, which again asserts unsubstantiated property interests in "common areas" and "amenities." This directly conflicts with the Court's Decision.

[60] To the extent it assists Maschmedts and avoids the need for further clarification, the Order will indicate that dismissal shall be with prejudice.